# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH DONOVAN,<br><br>    Petitioner,<br><br>    v.<br><br>PATRICK COVELLO,[1]<br><br>    Respondent. | Case No. 1:20-cv-00694-DAD-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT RESPONDENT'S MOTION TO DISMISS AND DISMISS SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DIRECTING CLERK OF COURT TO SUBSTITUTE RESPONDENT<br><br>(ECF Nos. 21, 25) |

Petitioner Jeremiah Donovan is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. As the second amended petition was filed outside 28 U.S.C. § 2244(d)(1)'s one-year limitation period, the undersigned recommends granting Respondent's motion to dismiss and dismissing the second amended petition.

## I.

## BACKGROUND

**A.  Statement of the Facts of the Offense[2]**

*Prosecution's Case*

On January 4, 2014 at 4:31 a.m., Zane Monroe called 911 from his girlfriend, Bonnie Palmer's, house. He said to the dispatcher, "[S]omeone just split the back of my head with a flashlight hella hard" and "I need an ambulance." He said "Miah" was the person who hit him and there was someone else with Miah. Monroe explained Miah accused him of stealing a sluice box. He then stated that he was "preparing to fight for [his] life" and was "s-s-seriously bleeding."

---

[1] Patrick Covello is the Warden of Mule Creek State Prison, where Petitioner is currently housed. (ECF No. 25 at 1 n.1.) Accordingly, the Court substitutes Patrick Covello as Respondent in this matter. See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 894 (9th Cir. 1996).

[2] The Court relies on the California Court of Appeal's October 4, 2016 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

Sheriff's Deputy Brandon Green responded to the call. When he arrived, he noticed a large gash on the right side of Monroe's head. Monroe told Sheriff's Sergeant Eric Erhardt, who also responded to the call, that Miah hit him. Monroe was taken to the hospital where he received approximately seven staples for his injury.

Deputy Green then interviewed Palmer. She said she was asleep when she heard someone yelling outside of her residence. She tried to wake Monroe and then heard someone enter the house through the front door. She recognized the yelling voice to be Miah's, whom she also identified as Donovan. Monroe went to the living room and began arguing with Miah so loudly about a sluice box that Palmer told them to take it outside. After the men went outside, Palmer said she heard a loud clink and looked out the window and saw Miah standing over Monroe with a dark object which she thought may have been a flashlight. She did not actually see Monroe get hit. She then saw Miah and the person he was with walk down the driveway and then heard the sound of a quad or dirt bike start up.

Deputy Green and Deputy Robert Nikiforuk then went to Donovan's house and noticed a sluice box and one or two dirt bikes out front. They made contact with his wife, Thoris Donovan, who said Donovan left around 1:30 a.m. that morning to go to a neighbor's house and was gone less than an hour. Deputy Nikiforuk then contacted Donovan, who said he had been home all night, except that he had gone to a friend's house down the street for a short period of time.

Sergeant Erhardt advised Donovan of his *Miranda* rights. He denied going to Monroe's house and denied hitting him, and continued these denials even after being confronted with accusations by Monroe and Palmer. The officers found a flashlight next to the kitchen sink and located a gray plaid shirt matching the clothing description given by Monroe and Palmer.

Monroe was subpoenaed for trial, but did not appear. Instead, the prosecutor introduced the 911 call made by Monroe.

At trial, Palmer characterized Donovan as a "good friend," and stated they called each other cousins even though they were not related. On the witness stand, she denied knowing who Monroe was arguing with and stated that she did not know who hit him. She explained she had a bad memory because of head trauma from a car accident and also because of a brain tumor.

***Defense***

A recording of a call made by Monroe to defense counsel's office on August 8, 2014, was played for the jury. In the call, Monroe said he was aware the call was being recorded. He said all he remembered of the incident was that he was asleep in bed when he was struck in the back of the head. He denied knowing who hit him and what he was hit with. He said Palmer does not know what happened either, because she was asleep next to him. He said he told the police he fingered Donovan because he was angry with him because of problems that they had in the past. He admitted to taking a sluice box without consent, but nevertheless said he did not think Donovan would hit him with a "flashlight." But immediately after saying that, he said that he did not know what hit him. He then added he did not know Donovan to be violent. He concluded by saying he was "sorry for all the trouble."

People v. Donovan, No. F070345, 2016 WL 5787281, at *1–2 (Cal. Ct. App. Oct. 4, 2016).

### B. Procedural History

Petitioner was charged in two separate actions for possession of methamphetamine for sale and assault with a deadly weapon. On August 13, 2014, Petitioner pleaded guilty to possession of drugs for sale. On September 5, 2014, Petitioner was convicted after a jury trial of assault with a deadly weapon. At a combined sentencing hearing on October 20, 2014, Petitioner was sentenced to a determinate imprisonment term of twenty years and four months. (LD[3] 1.) Petitioner only appealed the assault with a deadly weapon conviction. (ECF No. 25 at 2.)[4] On October 4, 2016, the California Court of Appeal, Fifth Appellate District affirmed the judgment. Donovan, 2016 WL 5787281, at *6. On November 14, 2016, Petitioner filed a petition for review in the California Supreme Court, which denied the petition on December 21, 2016. (LDs 3, 4.)

On January 2, 2020,[5] Petitioner constructively filed a state habeas petition in the California Court of Appeal, which denied the petition on April 8, 2020. (LDs 5, 6.) On May 14, 2020, Petitioner constructively filed the federal petition that commenced the instant proceeding and moved for a stay. (ECF Nos. 1, 2.) Meanwhile, Petitioner continued to litigate his state post-conviction collateral challenges. (LDs 7–13.) On March 5, 2021, the Court granted Petitioner's motion to stay pursuant to Rhines v. Weber, 544 U.S. 269 (2005), and stayed the first amended petition ("FAP")[6] so Petitioner could exhaust his claims in state court. (ECF No. 13.)

On January 25, 2022, the Court received Petitioner's motion to lift the stay and his second amended petition ("SAP"). (ECF Nos. 18, 19, 21.) On January 26, 2022, the Court lifted the stay and directed Respondent to file a response to the SAP. (ECF No. 20.) Respondent filed a motion to dismiss, arguing that the SAP was filed outside the one-year limitation period. (ECF No. 25.) Petitioner filed an opposition, and Respondent filed a reply. (ECF Nos. 26, 27.)

---

[3] "LD" refers to the documents electronically lodged by Respondent on April 21, 2022. (ECF No. 28.)

[4] Page numbers refer to the ECF page numbers stamped at the top of the page.

[5] Pursuant to the mailbox rule, a *pro se* prisoner's habeas petition is filed "at the time . . . [it is] delivered . . . to the prison authorities for forwarding to the court clerk." Hernandez v. Spearman, 764 F.3d 1071, 1074 (9th Cir. 2014) (alteration in original) (internal quotation marks omitted) (quoting Houston v. Lack, 487 U.S. 266, 276 (1988). The mailbox rule applies to both federal and state habeas petitions. Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010). Respondent applies the mailbox rule in the motion to dismiss. (ECF No. 25 at 2 n.2.)

[6] The original petition only contained exhausted claims. Because "Rhines allows a district court to stay a mixed petition, and does not require that unexhausted claims be dismissed while the petitioner attempts to exhaust them in state court," King v. Ryan, 564 F.3d 1133, 1139–40 (9th Cir. 2009), the Court granted Petitioner leave to file a FAP containing both exhausted and unexhausted claims. (ECF Nos. 9, 13.)

## II.

## DISCUSSION

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The SAP was filed after the enactment of AEDPA and is therefore governed by its provisions. AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1).

Section 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

**A. Commencement of Limitation Period**

In most cases, the limitation period begins running on the date that the petitioner's direct review became final. Petitioner appears to argue that he is entitled to a later commencement of the limitation period due to a state-created impediment, (ECF No. 26 at 3), and because the factual predicate of Petitioner's claims based upon DNA results will not be discovered until DNA testing is done, (ECF No. 21 at 14).

1    Section 2244(d)(1)(B) provides that the one-year limitation period begins to run from the
2 date on which a state-created impediment, in violation of the Constitution or laws of the United
3 States, is removed. 28 U.S.C. § 2244(d)(1)(B). Petitioner contends that the government has
4 created an impediment by continuing to suppress "the exculpatory evidence from the DNA test
5 results of the evidence collected by police," citing to, *inter alia*, Brady v. Maryland, 373 U.S. 83
6 (1963). (ECF No. 26 at 3.) Based on the record before the Court, it does not appear that the
7 prosecution suppressed evidence of existing exculpatory DNA test results, but rather that
8 Petitioner's various requests for DNA testing to be conducted have been denied.[7] Accordingly,
9 the Court construes Petitioner argument to be that the denials of his requests for DNA testing are
10 a state-created impediment. See United States v. Qazi, 975 F.3d 989, 992–93 (9th Cir. 2020)
11 ("We are specifically directed to construe pro se pleadings liberally. This duty applies equally to
12 pro se motions and with special force to filings from pro se inmates." (internal quotation marks
13 and citations omitted)); Allen v. Calderon, 408 F.3d 1150, 1153 (9th Cir. 2005) ("[T]he district
14 court must construe pro se habeas filings liberally.").

15    The Supreme Court has held there is no freestanding substantive due process right to
16 DNA evidence. Dist. Attorney's Off. for Third Jud. Dist. v. Osborne, 557 U.S. 52, 72 (2009).
17 The Ninth Circuit has recognized that a California prisoner seeking postconviction DNA testing
18 has a liberty interest under state law,[8] and "[i]n such circumstances, the question is whether the
19 state's procedures 'offend[ ] some principle of justice so rooted in the traditions and conscience
20 of our people as to be ranked as fundamental,' or 'transgress[ ] any recognized principle of
21 fundamental fairness in operation.'" Morrison v. Peterson, 809 F.3d 1059, 1065 (9th Cir. 2015)
22 (first alteration added) (quoting Osborne, 557 U.S. at 69). Morrison rejected a facial challenge to

---

[7] In a July 14, 2021 order dismissing the appeal of a superior court order denying Petitioner's motion for DNA testing, the California Court of Appeal stated that it "agree[d] with the trial court's assessment that [Petitioner]'s identity as the perpetrator of the [assault with a deadly weapon] crime was not, and should not have been, a significant issue in the case" and that "[t]here is no reasonable probability that an absence of Monroe's DNA on the flashlight, sluice box, or plaid shirt would have resulted in a better outcome for [Petitioner]." (LD 2 at 7–8.) Based on the foregoing, it appears Petitioner moved for DNA testing of the flashlight, sluice box, and clothing found at Petitioner's residence on the basis that an absence of Monroe's DNA on the items would support Petitioner's claim of innocence. (LD 2 at 8.)

[8] "California Penal Code § 1405 provides a mechanism for those convicted of crimes to obtain DNA testing of evidence where such testing is potentially relevant to proving innocence." Morrison v. Peterson, 809 F.3d 1059, 1063 (9th Cir. 2015).

California Penal Code section 1405(f)(5), which "requires the movant to demonstrate that '[t]he requested DNA testing results would raise a reasonable probability that, in light of all the evidence, the convicted person's verdict or sentence would have been more favorable if the results of DNA testing had been available at the time of the conviction.'" 809 F.3d at 1067 (quoting Cal. Penal Code § 1405(f)(5)). The Ninth Circuit found that "it does not violate due process for a court to evaluate what potential impact a negative DNA test could have" and that the petitioner had not shown "that the 'reasonable probability' requirement violates 'any recognized principle of fundamental fairness.'" Morrison, 809 F.3d at 1068, 1069.

Although Petitioner argues that his due process rights were violated by the trial court arbitrarily denying Petitioner's motions for DNA testing, (ECF No. 26 at 10), Petitioner has not demonstrated that the state court's denials failed to comply with California Penal Code section 1405 or otherwise "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," or "transgress[ ] any recognized principle of fundamental fairness in operation." Osborne, 557 U.S. at 69 (internal quotation marks omitted) (quoting Medina v. California, 505 U.S. 437, 446, 448 (1992)). Accordingly, the Court finds that Petitioner has not established that the denials of his requests for DNA testing are a state-created impediment, in "violation of the Constitution or laws of the United States," as required by 28 U.S.C. § 2244(d)(1)(B).

Section 2244(d)(1)(D) provides that the one-year limitation period begins to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Petitioner argues that because the factual predicate of Petitioner's claims based upon DNA results will not be discovered until DNA testing is done, he is entitled to a later commencement of the limitation period. (ECF No. 21 at 14.) Respondent contends that Petitioner "cannot argue for a later trigger date based on possible, future events that will allegedly provide new facts." (ECF No. 27 at 2.)

The Court is not aware of authority that has recognized a later commencement of the limitation period under § 2244(d)(1)(D) based upon a DNA test that has yet to be undertaken. However, the Court finds Johnson v. McBride, 381 F.3d 587 (7th Cir. 2004), to be instructive. In

1  Johnson, the federal habeas petitioner claimed that the state violated due process by withholding
2  evidence that a third party participated in the offense, which "(if true) might have enabled
3  Johnson to reduce the degree of his own culpability." 381 F.3d at 588. This claim was based on
4  the theory that "the police must have suspected [the third party], or they would not have sought a
5  judicial order to obtain hair samples that they compared with hairs found at the crime scene." Id.
6  Johnson argued that the fact the application was never disclosed meant the state was "still hiding
7  something" and that pursuant to 28 U.S.C. § 2244(d)(1)(D), the limitation period had not yet
8  started to run and would not start to run until Johnson received the application. Id. at 588–89.
9  The Seventh Circuit rejected this argument, stating that a "desire to see more information in the
10 hope that something will turn up differs from 'the factual predicate of [a] claim or claims' for
11 purposes of § 2244(d)(1)(D)" and holding that the "district judge therefore was right to use
12 § 2244(d)(1)(A) to identify the last day Johnson had to get a collateral attack under way." Id. at
13 589.

14      Similarly, here, a DNA test that may be conducted in the future and "may yield
15 exculpatory, incriminating, or inconclusive results," Skinner v. Switzer, 562 U.S. 521, 536
16 (2011), is akin to a "desire to see more information in the hope that something will turn up" and
17 "differs from 'the factual predicate of [a] claim or claims' for purposes of § 2244(d)(1)(D),"
18 Johnson, 381 F.3d at 589. Cf. Skinner, 562 U.S. at 525 ("In no event will a judgment that simply
19 orders DNA tests 'necessarily impl[y] the unlawfulness of the State's custody.'" (alteration in
20 original) (citation omitted)). Therefore, the Court finds that a possible, future DNA test is not
21 "the factual predicate of [a] claim or claims" for purposes of § 2244(d)(1)(D).

22      Based on the foregoing, the Court finds that § 2244(d)(1)(A) is applicable in the instant
23 case, and the limitation period began running on the date that Petitioner's direct review became
24 final. Here, the judgment became final on March 21, 2017, when the ninety-day period to file a
25 petition for writ of certiorari in the United States Supreme Court expired. See Bowen v. Roe, 188
26 F.3d 1157, 1159 (9th Cir. 1999). The one-year limitation period commenced running the
27 following day, March 22, 2017, and absent tolling, was set to expire on March 21, 2018. See
28 Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (citing Fed. R. Civ. P. 6(a)).

**B.  Statutory Tolling**

The "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2). As set forth above, Petitioner is not entitled to a later commencement date of the limitation period, and it was set to expire on March 21, 2018, absent tolling. Although Petitioner filed his first state habeas petition on January 2, 2020, and four more petitions thereafter, (LDs 5, 7, 9, 11, 13), § 2244(d) "does not permit the reinitiation of the limitations period that has ended before the state petition was filed." Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003). Accordingly, Petitioner is not entitled to statutory tolling for his state habeas petitions.

Petitioner contends that his various motions for DNA testing and appointment of counsel, filed from August 30, 2017, to December 22, 2021, warrant statutory tolling. (ECF No. 26 at 11.) The Supreme Court has held that "the phrase 'collateral review' in § 2244(d)(2) means judicial review of a judgment in a proceeding that is not part of direct review." Wall v. Kholi, 562 U.S. 545, 547 (2011). In finding that the motion to reduce sentence under Rhode Island law tolled the limitation period in Kholi, the Supreme Court noted that a "motion to reduce sentence is unlike a motion for post-conviction discovery or a motion for appointment of counsel, which generally are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment." 562 U.S. at 556 n.4. The Ninth Circuit has held that discovery motions, which do not challenge a conviction but simply seek material that might be of help in later state proceedings, do not statutorily toll the limitation period. Ramirez v. Yates, 571 F.3d 993, 1000 (9th Cir. 2009) (citing Hodge v. Griner, 269 F.3d 104, 107 (2d Cir. 2001)).

Petitioner cites to Hutson v. Quarterman, 508 F.3d 236 (5th Cir. 2007) (per curiam), in support of his contention that his various motions for DNA testing and appointment of counsel warrant statutory tolling. (ECF No. 26 at 11.) In Hutson, the Fifth Circuit held that "a motion to test DNA evidence under Texas Code of Criminal Procedure article 64 constitutes 'other collateral review' and thus tolls the AEDPA's one-year limitations period under 28 U.S.C. § 2244(d)(1)." 508 F.3d at 240. However, Hutson is distinguishable because the Texas statute

provided for review of the judgment and release on bail after examining the results of the DNA testing. Id. at 238–39. In contrast, California Penal Code section 1405 does not allow for review of a judgment and, in the context of appointing counsel, specifically distinguished between a motion for DNA testing under section 1405 and a postconviction collateral proceeding. See Cal. Penal Code § 1405(b)(4) ("This section does not provide for a right to the appointment of counsel in a postconviction collateral proceeding, or to set a precedent for any such right, in any context other than the representation being provided an indigent convicted person for the limited purpose of filing and litigating a motion for DNA testing pursuant to this section.").

As Petitioner's various motions for DNA testing and appointment of counsel were not direct requests for judicial review of a judgment but rather sought material that might be of help in later proceedings, the Court finds that the motions do not statutorily toll the limitation period. See Ramirez, 571 F.3d at 1000; Woodward v. Cline, 693 F.3d 1289, 1294 (10th Cir. 2012) (holding motion for DNA evidence did not statutorily toll AEDPA limitation period); Brown v. Sec. for Dep't of Corr., 530 F.3d 1335, 1338 (11th Cir. 2008) (same); Price v. Pierce, 617 F.3d 947, 952–54 (7th Cir. 2010) (same); Hodge, 269 F.3d at 107 (same).

### C. Equitable Tolling

The limitation period is subject to equitable tolling if the petitioner demonstrates "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Petitioner bears the burden of alleging facts that would give rise to tolling. Holland, 560 U.S. at 649; Pace, 544 U.S. at 418.

Petitioner asserts that his various motions for DNA testing and appointment of counsel, filed from August 30, 2017, to December 22, 2021, warrant equitable tolling. (ECF No. 26 at 12.) Respondent argues that Petitioner's challenge in obtaining discovery on state habeas is not an extraordinary circumstance because a habeas petitioner is not entitled to discovery as a matter of ordinary course and habeas is not a vehicle for Petitioner to search for evidence to support his claims. (ECF No. 25 at 4–5.) Respondent contends that "Petitioner cannot claim equitable tolling–an extraordinary remedy–is warranted simply because he may have allowed the

1 limitation period to expire while he was trying to investigate claims, obtain post-conviction
2 discovery, and retain counsel. If that justified equitable tolling, the federal limitation period
3 would regularly be circumvented." (ECF No. 25 at 5.)

4 The equitable tolling standard "is a very high bar, and is reserved for rare cases." Yeh v.
5 Martel, 751 F.3d 1075, 1077 (9th Cir. 2014). The Court is not aware of authority holding that
6 requests for DNA testing pursuant to California Penal Code section 1405 constitute an
7 extraordinary circumstance warranting equitable tolling. See Munoz v. Hubbard, No. 11-CV-
8 2321-H, 2012 WL 1672690, at *5 & n.1 (S.D. Cal. May 14, 2012) (holding, after "careful
9 consideration" and not finding "a case supporting application of equitable tolling to requests for
10 DNA testing under California Penal Code section 1405," that requests for "DNA testing do not
11 present extraordinary circumstances justifying equitable tolling"); Burton v. Runnels, No. CIV
12 S–02–0675 LKK PAN (JFM) P, 2006 WL 1062097 (E.D. Cal. Apr. 21, 2006) (holding that
13 motion for DNA testing under California Penal Code section 1405 did not statutorily toll the
14 statute of limitations and finding no basis for equitable tolling). Based on the foregoing, the
15 Court finds that Petitioner has not demonstrated that he is entitled to equitable tolling.

16 **D.  Actual Innocence Gateway**

17 "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass
18 whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations."
19 McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). The Supreme Court "caution[ed], however,
20 that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold
21 requirement unless he persuades the district court that, in light of the new evidence, no juror,
22 acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Id. (second
23 alteration in original) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). A "gateway claim
24 requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy
25 eyewitness accounts, or critical physical evidence—that was not presented at trial.'" House v.
26 Bell, 547 U.S. 518, 537 (2006) (quoting Schlup, 513 U.S. at 324). The "Schlup standard is
27 demanding and permits review only in the 'extraordinary' case." House, 547 U.S. at 538 (some
28 internal quotation marks omitted) (quoting Schlup, 513 U.S. at 327).

To the extent that Petitioner argues that the SAP should not be dismissed as untimely because he is actually innocent, the Court finds that Petitioner has not satisfied the requirements of an actual innocence gateway claim. Although Petitioner contends that a DNA test will support his claim of actual innocence, the record before the Court does not demonstrate that DNA testing was actually done, much less that the testing results were exculpatory. Petitioner has not established that there is new reliable evidence actually in existence that would make it "more likely than not that no reasonable juror would have convicted him," Schlup, 513 U.S. at 327, and thus, the Court finds that Petitioner does not qualify for the actual innocence gateway exception.

Furthermore, even if DNA testing were conducted and the results revealed that the victim's DNA was not present on the flashlight, sluice box, and clothing found at Petitioner's residence, it is not clear to the Court that Petitioner would qualify for the actual innocence gateway exception. "[T]o satisfy Schlup, the petitioner's new evidence must convincingly undermine the State's case," Larsen v. Soto, 742 F.3d 1083, 1096 (9th Cir. 2013), and the petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt,'" House, 547 U.S. at 536–37 (quoting Schlup, 513 U.S. at 327). An absence of the victim's DNA on the items may be helpful to Petitioner, but it is not sufficient to convincingly undermine the identifications of Petitioner made by Monroe in the 911 call and made by Monroe and Palmer to the investigating officers immediately after the incident such that "it is more likely than not that *no* reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327 (emphasis added).

**E. Conclusion**

Petitioner is not entitled to a later commencement date of AEDPA's one-year limitation period, and it was set to expire on March 21, 2018, absent tolling. As set forth above, Petitioner is not entitled to statutory tolling based on the state habeas petitions filed after the limitation period ended or the various motions for DNA testing and appointment of counsel. Likewise, Petitioner's motions for DNA testing and appointment of counsel do not warrant equitable tolling. Both the original federal habeas petition and the SAP were filed after the one-year

11

limitation period expired on March 21, 2018, and Petitioner has not satisfied the requirements for the actual innocence gateway exception. Accordingly, the SAP is untimely, and it should be dismissed.

## III.

## RECOMMENDATION & ORDER

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. Respondent's motion to dismiss (ECF No. 25) be GRANTED; and
2. The second amended petition for writ of habeas corpus (ECF No. 21) be DISMISSED as untimely.

Further, the Clerk of Court is DIRECTED to substitute Patrick Covello as Respondent in this matter.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 25, 2022**                    /s/ Erica P. Grosjean
                                             UNITED STATES MAGISTRATE JUDGE

12